IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| TIMOTHY GRAHAM, § | |
| Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION NO. 1:23-cv-734-RP |
| § | |
| LEISURE POOLS USA TRADING, § | |
| INC., d/b/a EXPLORE INDUSTRIES § | |
| SERVICES USA 1, § | |
| Defendant. § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

**I.      Introduction and Summary.**

Plaintiff Timothy Graham ("Graham" or "Plaintiff") is a former employee of Defendant Leisure Pools USA Trading, Inc., d/b/a Explore Industries Services USA 1 ("Leisure Pools" or "Defendant"). Plaintiff filed suit against Defendant in this Court for his unpaid overtime wages under the Fair Labor Standards Act. (Doc. 1). Defendant responded by filing a Motion to Dismiss, arguing that an arbitration agreement applies to this dispute and that this Court has no jurisdiction to compel arbitration in Tennessee. (Doc. 8). However, Defendant has failed to produce—and cannot produce—a valid, enforceable, executed agreement to arbitrate between Plaintiff and Defendant. Additionally, Defendant's wholly unsupported assertion that this Court is without jurisdiction to compel arbitration outside of this district is flatly incorrect. Accordingly, Defendant's Motion must be denied because no arbitration agreement exists to enforce and because its requested relief is improper. In the alternative, Plaintiff requests that this Court order a jury trial to determine whether a valid agreement to arbitrate exists because Plaintiff has, at the very least, raised a fact issue on this question that requires an assessment of witness credibility. Finally, if this Court decides to compel arbitration, Plaintiff requests that it exercise its discretion to stay the case pending the outcome of the arbitration rather than dismiss it altogether.

## II. Argument and Authorities.

### A. This Court Can—and Should—Find that No Arbitration Agreement Exists Between the Parties.

In the Fifth Circuit, a party seeking to compel arbitration must establish: "(1) there is a valid agreement to arbitrate; and (2) the dispute falls within the scope of that agreement." *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018). A party cannot be compelled to arbitrate unless they have agreed to. *Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.2d 884, 886 (5th Cir. 2009).

While Defendant purports to rely upon a Tennessee choice of law provision in the unsigned arbitration agreement at issue here in its Motion, a choice of law provision "has force only if the parties validly formed a contract," *Edminster, Hinshaw, Russ & Assocs., Inc. v. Downe Twp.*, 953 F.3d 348, 351 (5th Cir. 2020), and does not apply "[w]hen determining the preliminary question of contract formation." *Realogy Holdings Corp. v. Jongebloed*, 957 F.3d 523, 531 n.11 (5th Cir. 2020). Thus, Plaintiff analyzes the question of formation under Texas and 5th Circuit law.

#### 1. A Court—Not an Arbitrator—Decides Whether an Arbitration Agreement Was Formed.

The first question of formation—whether an arbitration agreement exists— "is a question of state contract law and is **for the court**." *Id.* (citing *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016)). In other words, before deciding whether a particular dispute is subject to arbitration under the applicable arbitration agreement (or delegating that decision to an arbitrator), the court must first find that such an arbitration agreement exists in the first place.

Defendant argues that, under the Supreme Court's holdings in *Rent-A-Center, W. Inc. v. Jackson*, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010) and *Henry Schein Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 202 L. Ed. 2d 480 (2019), the presence of a delegation provision in

the arbitration agreement requires an arbitrator, and not a court, to decide issues related to the agreement's applicability or enforceability. (Doc. 8 at 6-7). It is unclear from its Motion whether Defendant maintains that a question of agreement formation is included in "issues related to the agreement's applicability or enforceability," or whether an arbitrator can decide questions of arbitration agreement formation, so long as a delegation provision is present. Either theory is wrong.

These two Supreme Court rulings do not disturb the fundamental legal principle in *Kubala*. Indeed, as Justice Kavanaugh wrote in *Henry Schein*, "[t]o be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." 139 S. Ct. at 530. Therefore, a court—and only a court—is empowered to decide questions of an arbitration agreement's existence, notwithstanding the existence of a delegation provision that refers questions of arbitrability to an arbitrator. Put differently, questions of arbitrability (such as whether a particular dispute is within the scope of an arbitration clause) are separate from questions of an arbitration agreement's formation and cannot be considered until and unless a court determines that a valid arbitration agreement exists. *Id*.

> 2. *Defendant's Failure to Execute the Arbitration Agreement Precludes a Finding that the Agreement was Formed.*

Here, there is no valid agreement to arbitrate between Mr. Graham and Leisure Pools, so the Court need not reach the question of whether the arbitration agreement applies, or rule on Defendant's argument that an arbitrator should be the one to determine that question because of any delegation provision.

As delineated by the Fifth Circuit in *Huckaba*, state contract law applies to the question of whether an arbitration agreement exists. 892 F.3d at 688. Importantly, at this stage, there is no presumption in favor of arbitration under state or federal law. *Id.* at 688-689 (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003) and *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013)). Defendant, as the party moving to compel arbitration,

bears the burden of showing the agreement at issue contains all required contract elements. *J.M. Davidson* at 228.

Under Texas state law, "a binding contract requires: '(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding.'" *Huckaba* at 689. In *Huckaba*, the Fifth Circuit found that the arbitration agreement failed to be formed because the fifth prong was not met. *Id.* at 691. The facts the court considered relevant to this analysis were the defendant's blank signature block and the express language of the agreement, which indicated the defendant's intent to be bound by its signature. *Id.* at 689-690.

Here, it is undisputed that Defendant did not execute the arbitration agreement:

> IN WITNESS WHEREOF, the parties have executed this Agreement effective as of the Effective Date.
>
> COMPANY:                              EMPLOYEE:
>
> LEISURE POOLS USA TRADING, INC.       Timothy W. Graham
>
> By:_____            Signature: [signature]
> Name:_____            Name Printed: Timothy W. Graham
> Title:_____            Address: 316 Cheshire Ln
>                                                Lafayette, IN 47909
> 2901 Leisure Island Way               Facsimile No. _____
> Knoxville, TN 37914
> Facsimile No.: ____865-219-2889

(Doc. 8-1 at 15). Like in *Huckaba*, here the express language of the arbitration agreement indicates an intention for Defendant to be bound by its signature. For example, clause 9.8 provides that "[t]his Agreement may not be amended or modified except by an agreement in writing which refers to this Agreement **and is signed by both parties**." *See id.* at 14. Texas courts and the Fifth Circuit have found that clauses which require a signature to amend arbitration agreements demonstrate an intent to be bound by a signature. *See Huckaba* at 690 (defendant intended to be bound by its signature when agreement had a blank signature block and a clause requiring signatures to modify agreement) and *In re Bunzl USA, Inc.*, 155 S.W.3d

202 (Tex. App.—El Paso 2004) (same); *see also, Scaife v. Associated Air Ctr. Inc.*, 100 F.3d 406, 410-411 (5th Cir. 1996) (signatures required to validate a contract when contract contained signature block and provision requiring amendments to be signed writings); *Simmons & Simmons Constr. Co. v. Rea*, 286 S.W.2d 415, 418-419 (Tex. 1995) (signatures required where contract had a signature block).

Further, as in *Huckaba*, Plaintiff here had no belief that the arbitration agreement was enforceable because he did not receive a countersigned copy of the agreement. *See* Exhibit A at ¶¶ 3-4. Plaintiff here had the expectation and intent that Leisure Pools would sign on the signature block slated for its signature. *Id.* At ¶ 2. Plaintiff did not intend to be bound by the arbitration agreement until and unless Leisure Pools also signed the agreement and agreed in writing to be bound by its terms. *Id.* at ¶ 5. Plaintiff did not discuss the arbitration provision with anyone or orally agree to arbitration. *Id.* at ¶ 6.

Notably, in *Huckaba*, the Fifth Circuit found several factors unpersuasive to support the defendant's argument that it intended to be bound without its signature. *Huckaba* at 690. These factors include that the defendant created the arbitration agreement, kept it as a business record, and moved to compel arbitration when the plaintiff sued. *Id.* Likewise, the Fifth Circuit found that the plaintiff-employee's performance under the employment contract without the defendant-employer's signature was irrelevant to the analysis of the defendant's intent to be bound, when the agreement contained no language indicating that the plaintiff-employee's commencing work constituted acceptance and bound the parties. *Id.*

Here, Defendant's blank signature block, as well as a clause barring amendments without a writing signed by both parties, and Plaintiff's declaration evidencing his intent for the parties not to be bound until and unless Defendant executed the agreement, renders the arbitration agreement non-existent because it demonstrates an intention that the parties only be bound if their signatures were applied. To hold otherwise would allow Defendant to have it

both ways: claiming that it is bound by the unsigned, unexecuted arbitration agreement now, only when it intends to enforce it, when it could just as easily have argued that it was not bound by the agreement because it had not signed it. The Fifth Circuit prevented the inherent unfairness of this exact situation with its ruling in *Huckaba.* 892 F.3d at 691. This Court should likewise hold Defendant to account by denying its Motion on the grounds that no valid arbitration agreement was formed between the parties.

### B. Defendant Failed to Use the Proper Enforcement Mechanism to Compel Arbitration.

Even if there was a valid arbitration agreement in this case—which there is not—Defendant's Motion should still be denied because dismissal is not a valid way to enforce an arbitration agreement. Defendant asserts that this Court is without authority to compel arbitration outside its district—an assertion which is both incorrect and unsupported.

The Fifth Circuit has repeatedly held that district courts are "empowered to compel arbitration notwithstanding the parties' contractually-established forum or outside the district in which the courts sit." *Nat'l Iranian Oil Co. v. Ashland Oil, Inc.*, 817 F.2d 326, 331 (5th Cir. 1987); *see also Dupuy–Busching Gen. Agency, Inc. v. Ambassador Ins. Co.,* 524 F.2d 1275, 1278 (5th Cir. 1975) (Mississippi district court properly ordered parties to arbitrate in New Jersey); *Mun. Energy Agency of Mississippi v. Big Rivers Elec. Corp.,* 804 F.2d 338, 344–45 (5th Cir. 1986) (recognizing that *Dupuy* empowers district courts to compel arbitration outside the district in which they sit).

Defendant argues the parties' arbitration agreement, if enforceable, mandates arbitration outside this judicial district, and that a court can only compel arbitration within its own judicial district; therefore, Defendant says, the appropriate enforcement mechanism is dismissal by this Court. (Doc. 8 at 9). Notably, Defendant does not cite a single case for any of these propositions. *Id.* However, in similar matters, this Court has found a stay pursuant to the Federal Arbitration Act is more appropriate than dismissal if the Court compels arbitration. *See*

*TML Multistate Intergov't Emp. Benefits Pool v. HealthEdge Software, Inc.*, No. 1:18-CV-211-RP, 2018 WL 8619806, at *7 (W.D. Tex. Dec. 17, 2018) (applying *Dupuy*'s rule and adopting magistrate judge's recommendation that the case be stayed, not dismissed, pending arbitration). Because *Dupuy* applies, and this Court *is* empowered to compel arbitration outside its own judicial district, the Defendant's requested relief should be denied.

### C. Alternatively, Plaintiff is Entitled to a Jury Trial Pursuant to the FAA.

If the Court does not deny Defendant's Motion, Plaintiff requests a jury trial on the issue of whether an arbitration agreement was formed because, at a minimum, Plaintiff has raised a fact question as to the existence of a valid arbitration agreement. *See Nabors Drilling USA, LP, v. Carpenter*, 198 S.W.3d 240, 246 (Tex. App.—San Antonio 2006, no pet.) (granting an evidentiary hearing when "the material facts necessary to determine the issue are controverted by an opposing affidavit or otherwise admissible evidence.") The FAA provides in material part, "[i]f the making of the arbitration agreement…be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. The making of the arbitration agreement is in issue here because Defendant submitted an unsigned agreement, and the express language of the agreement indicates the parties are to be bound by their signatures.

Plaintiff seeks to exercise his right to a jury trial to confront and cross-examine Defendant's witnesses to a jury of peers. For example, Plaintiff would seek to cross-examine Defendant's witnesses regarding whether it was Defendant's standard practice to fully execute employment or arbitration agreements, whether multiple versions of the arbitration agreement exist, or whether any of Defendant's representatives discussed the arbitration provision with Plaintiff or otherwise came to a meeting of the minds with Plaintiff as to the intent to arbitrate his future claims, if any.

### D. If the Court Compels Arbitration, It Should Stay This Case.

Finally, if the Court is inclined to compel arbitration, it should exercise its discretion to stay this case pending the outcome of arbitration rather than dismiss it. Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et. seq.*, a judge "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. But under Fifth Circuit precedent, district courts have discretion to dismiss an action in lieu of staying if: (1) a stay would not serve a useful purpose, and (2) all matters in the action are arbitrable. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). However, if a stay would serve the useful purpose of preserving remedies that would be otherwise lost if the action was dismissed, then a dismissal is not appropriate. *See US, ETC. v. Weiss Pollution Control Corp.,* 532 F.2d 1009, 1012-13 (5th Cir. 1976).

Staying this action would serve the vital purpose of preserving Plaintiff's remedies pursuant to Fifth Circuit guidelines on claim timeliness. *See Fonseca v. USG Ins. Servs.,* 467 F.App'x 260, 261 (5th Cir. 2012). In *Fonesca*, the court ruled the plaintiff's claim was time barred stating a "demand for arbitration does not toll the statute of limitations." *Id*. (quoting *Weiss Pollution Control*, 532 F.2d at 1013). According to the court, had the plaintiff filed her suit within the statute of limitations and sought a stay pending arbitration, this course of action would have guaranteed her action was timely. *Id*. In this case, if arbitration either does not proceed or fails for any reason, the statute of limitations on some of Plaintiff's claims may run, thereby denying the Plaintiff a forum to seek a remedy for his injuries. Although this risk is slight, it is real, and this Court should stay this action pending the outcome of arbitration to ensure that Plaintiff's right to seek redress for his claims is preserved. *See Vargas v. Tex. Taco Cabana, L.P.*, No. A-14-CA-389-SS, 2014 U.S. Dist. LEXIS 89147, at *5 (W.D. Tex. June 30, 2014).

### III. <u>Conclusion</u>.

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety and order the case proceed to litigation. In the alternative, Plaintiff requests that the Court order a jury trial on the issue of contract formation. Finally, if the Court grants such Motion, Plaintiff requests that the Court stay the case pending the results of arbitration rather than dismiss it.

Respectfully submitted,

/s/ *Caitlin Boehne*_____
Austin Kaplan
Texas Bar No. 24072176
akaplan@kaplanlawatx.com
Matthew "Maff" Caponi
Texas Bar No. 24109154
mcaponi@kaplanlawatx.com
Caitlin Boehne
Texas Bar No. 24075815
cboehne@kaplanlawatx.com
3901 S. Lamar Blvd, Suite 260.
Austin, TX 78704
Phone: (512) 553-9390
Fax: (512) 692-2788

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on September 20, 2023, I electronically filed the foregoing document with the Clerk of the Court using the TXW CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ *Caitlin Boehne*_____
Caitlin Boehne